Good morning, Your Honors. Kathleen Sullivan for Appellant Samsung. I'd like to reserve five minutes for rebuttal. The district court in this case erroneously dismissed as untimely, under the governing four-year statute of limitations, Samsung's second amended complaint, which presented a textbook case, an easy case, of a continuing antitrust violation, a continuing conspiracy in this case, by alleging new and independent acts within the statutory period that caused new antitrust injury within the statutory period. And so there's no dispute here over what the legal standard is. It's new and independent acts that are not a simple reaffirmation of the prelimitations conduct with new injury. We've got both. I'd like to start, Your Honors, with the new and independent anti-competitive acts by the defendants. And let's remember the statutory period here begins July 15, 2006. What does the complaint allege happened after July 15, 2006? Well, August 28th, for a week in Osaka, the defendants, Panasonic and its conspirators in this case, met in Osaka to impose licensing requirements for a new generation of SD cards, secure digital memory cards, that were not covered by the licenses they had conspired to impose upon licensees back in 2003. We cite in our reply brief at page 16, the Aretha Treatise, which says that the easy case of new and independent acts within the statutory period, the easy case is when a cartel gets together to fine-tune or re-fix the price and output terms for the conspiracy. And this is that case. It's a little bit different from price fixing. We're alleging it's a different kind of conspiracy under the rule of reason. But the point is there's a new meeting to impose a new agreement. With respect to the 2003 license, did it allow the group to modify the license on its own? Yes, Your Honor, as to those cards to which its specifications applied. But the key point is that clear from the text of the license? We think it is, Your Honor. We think that the, well, the text of the license is not before you. What's before you, we're on a motion to dismiss. We've got the allegations and the complaint. But what I'd like to refer you to specifically, if you take a look at paragraphs 86 and 88 of the complaint, you'll see that's, I know you've got it, Andy. Go ahead. Keep going. Paragraphs 86 and 88 make clear that the 2003 license applied to an old generation of SD cards. Remember, back in 2003, we're not in the world Your Honor is using right now with a tablet. We're not in the world of smart phones. I have a drawer full of them, Ms. Sullivan. Your Honor, you remember the days, as I do, of large form factor technology. What happens in 2005, 2006, 2007, as we move to smart phones, is that SD cards change and the specifications in the license change. And, Your Honor, it's alleged clearly in the complaint that the new SD cards, micro SD cards and high-capacity SD cards, SDHC cards, are read on different specifications than did the cards under the 2003 license. So, Your Honor, Judge Pius, what I would focus on is that the 2003 license cannot apply to the new SD cards by its terms because the specifications are different. If you take a little mini SD card, it's not going to fit in the slot for the old SD cards covered by the 2003 license. Different form factor, different file management. Well, I guess I was trying to get at what the district court was up to. Well, Your Honor, I say that in a positive way. I mean, the district court looked at the license and said that it seemed to extend. Your Honor, the district court erred in holding that the 2003 license extended, in the words of this Court, permanently, irrevocably, finally, inertially into the era of the new SD cards. That was the error. This couldn't be the more opposite case, partly because of technology, as we've just discussed. The new SD cards simply can't be licensed physically because they don't read on the 2003 specifications. But more important, Your Honor, and if you look at nothing else in the complaint, please look at paragraphs 100 and 106 of the Second Amended Complaint, because it shows that the defendants themselves admitted that the 2003 license does not extend to the new SD cards. Would those two paragraphs – I'm sorry, Your Honor. No, no. I – please, go ahead. If I could just read a little bit of the key language, because I think this is at the very heart of the error the district court made. Paragraph 100 tells the story of September 4, 2006, when the defendants and their agents go to Samsung, and Samsung is trying to obtain permission to manufacture the new generation of SD cards under the old 2003 license which it signed. What do the defendants say? No, you may not. The defendants in paragraph 100, this is the September 4, 2006 meeting in which SD3C, the captive licensing agency of Panasonic, goes to Samsung, and it says to its agent, Mr. Quackenbush, the 2003 SD card license covered only full-sized SD cards, up to 2 gigabytes, and did not cover micro SD cards or SDHC cards. So – and then let's fast-forward into February 1, 2007, all the way back to the statute, also well within the statutory period, paragraph 106 of the complaint. Again, the defendants tell Samsung, you may not license micro SD cards and SDHC cards as a consequence of the 2003 SD card license that you signed. The e-mail says – this is documentary, it's in the complaint – Samsung did not have permission to manufacture and sell micro SD cards or SD cards with capacities greater than 4 gig, that's the SDHC cards, under the license agreement that Samsung signed. So, Judge Pius, there's two reasons why this is the textbook case. Actually, if I could give you three. Textbook case of new and independent acts. We have a new meeting. It imposes a new agreement, 2006 license agreement, and the 2006 license agreement cannot technologically flow from the 2003 license, and the defendants told us so. They refused our effort to obtain permission to manufacture under the old license. What could be a more textbook example of new and independent acts within the statutory period than those sequence of events in August 2006 through February of 2007? So, Judge Pius, I don't – I'm not sure what the district court was up to. It seems such a clear error. All that I can surmise is that the district court thought that this case was like the AMF case or the Pace case, which are the outlier cases in which the old event permanently, finally, and irrevocably determines the anti-competitive injury. If you want to make a smog afterburner, and the car industry gets together and says, I'm sorry, we're shutting you out of the market and picking our own, and cars have to be planned three, four years in advance because the afterburner has to be fit into the car, that's a permanent exclusion from the market. That was what your AMF case was all about, a permanent exclusion from the car original equipment manufacturer market. That's not this case, nor is this case Pace. In Pace, there was an attempt to enforce a contract, an anti-competitive contract, through a lawsuit. And this Court said, well, you can't sit on your rights, not bring a counterclaim, and then tell us, oh, well, the appeal is a new and independent act. Those are the exceptions. The normal case, the default case for a continuing violation, is exactly what we have here. We have a new and independent act in the statutory period, even if there's some history that goes back before the period. Breyer. Well, this technology apparently continues to evolve. I know there are these SD cards. I think it's SDXC or something like that. I don't know whatever it is. But there's 64 gigabytes, and I thought I might have even seen 128 gigabytes. I don't know. There's huge cards out there. It does, Your Honor. That's exactly why it would be entirely inappropriate to grant the defendants a safe harbor, because they colluded back in 2003 about an old and obsolete technology. They shouldn't get a right in perpetuity to cover the entire SD market when they didn't cover that market in the 2003 licenses. What do we do with the State law claims? They stand or fall with the Federal claims, Your Honor, because the district court said they were the same statute and the same reasoning. And, Your Honor, as to injury, I think it's self-evident that there's no injury – sorry, that there is new and independent injury in the statutory period, because Samsung doesn't start to make any SD cards until August 2006, September 2006, gets its first bill. We're somewhat late in the market, right? November 2006. That's right, Your Honor, because Samsung didn't need to make SD cards until its customers like Nokia asked it to when the smartphone arrived in 2005, 6, 7. Your Honor, should you reach the alternative ground of any antitrust basis for dismissing the complaint, the defendants have urged an alternative ground for affirmance. We strenuously object that that shouldn't be reached here. The district court didn't reach it. It's been barely briefed, four and a half pages in the defendant's brief. And we believe we obviously stated an antitrust claim, and I'm happy to address that if Your Honor wishes. But otherwise, I won't take up my time. Roberts, thank you, Your Honor. Kessler, thank you, Your Honor. My name is Jeffrey Kessler. I represent Panasonic, and I'll speak for the defendant appellees today. The fundamental problem with what you just heard is that it doesn't identify what is the violation that's being alleged, because once you identify the violation, it becomes clear that the 2006 license agreement is not independent of the violation. In fact, it's inextricably linked to the earlier conduct. And that's what the district court was up to, if I can explain. If you read through this complaint, the complaint is not that the violation is that a 6 percent royalty was set in 2006. That cannot be a violation, because a patent pool has the right to set a price. The violation alleged is that back in 1999-2000, these defendants, according to the plaintiffs, illegally set up a patent pool, illegally manipulated standards, and engaged in a royalty-free cross-license, which together with the ability of the patent pool to set a license fee, put them, in the words of paragraph 153, at a permanent cost disadvantage, permanent cost disadvantage. Now, why is that? It's because what they are attacking in this complaint is the original structure of the patent pool, the standard setting, the royalty-free cross-license. If you were just looking at the 2006 decision to extend to a new format, there would be no claim, because it wouldn't just be setting a new price, which is what every patent pool does. But wasn't there new injury after 2000, after the agreement in Osaka? New injury is not enough under this Court's case law. We said we have no disagreement on the standard. So on the PACE, which does accurately set forth the standard, after looking through all the cases, the first idea is there must be a new and independent act. For example, looking at the AMF case, the AMF case, there have been countless generations of new cars. Every year there's a new car model. That same decision, that same structure to have the patent pool and to exclude that type of smog device is still continuing today to new models. If the car companies each year said, yes, we're going to keep doing this for the new models, that is not an independent action. That is the problem.  Well, counsel, if I may, and I'm sure Ms. Sullivan will correct me if I misstate her argument, but I understood from both her papers and her argument today that she distinguishes the cases you've cited, particularly the smog-related car case, on the basis that we're talking about different technologies. It may be SD cards here, but or, you know, memory devices for cameras, for smartphones and so forth, but the technology itself is distinctly different in the sense that it is highly evolved. Your Honor, that's simply not correct according to the complaints allegations. And let me explain. This is a single patent pool. It's the same patents. It's not different patents. So it's the same technology. All that this is, as alleged, is a new generation, a smaller card or a card that has higher density, but it's the same SD technology patents that are being licensed. So this is very much like a one- And I'm not going to go back and repatent this at all. Absolutely not, Your Honor. And that's why, and this is important. In paragraph 115, Samsung alleges, not us, that they did not execute the 2006 license. They allowed the 2003 license to be renewed, and they paid royalties for the new products under the 2003 license. That's their allegations. So, again, this is the same patent pool. If Your Honor were to rule the statute doesn't apply here, then every patent pool that's set up, and then someone like Samsung, who's known about the pool since 2000, can sit by for years and then say, well, now the same patent pool is applying to some new version of the product, and now I want to sue now, so there's no oppose, there's no ability to ever have certainty here. Your Honor, I think I have an analogy that works. I usually do. Judge Gould has a question for you. Well, I want to let counsel finish his answer to Judge Ezra, then I do have a question. Okay. What I was going to say, Judge, is that think of the following analogy. What they are alleging is that we set up our clients in a legal toll booth on a road. That's what the standard was. That's what the patent was. And we gave a free set of passes to our clients. They don't pay the tolls. And that we have the ability to charge tolls. Years, and they don't sue over that toll booth for eight years, nine years. They don't sue over the royalty-free cross license for nine years. Then a new car comes across, a new model of a car, and they go, yeah, we're going to impose the same toll, the same 6% toll on the new car coming forward. And they go, well, that's something new, but it's not independent. Under Pace, it's exactly linked to the, they can't state a claim, and their complaint makes this clear, without attacking the cross license from 99, the standards from 99-2000, the whole structure, the fact that simply a new generation came on and we set a price, it doesn't fit as a new act. But Judge Gould, please, let me get your question. I'm sorry. You know, again, my question's, it's a little different. It may be out in left field, so I'll apologize if it doesn't cut to the core here. But I'm trying to look at this from a little bit of distance in my mind. And I'd like your perspective on this. If a private action is not available to deter antitrust violations, after the first four years of some wrongful conspiracy, let's assume that from 1999, this was wrong from the get-go. But if you don't permit an action when there's new damages, and additional acts within a four-year period, isn't it the public, wouldn't the public be harmed by saying we're not going to have a private attorney general function for antitrust law in this respect? And whatever was wrong can stay wrong, can go on for perpetuity, so far as private actors are able to challenge it. Your Honor, it's an excellent question. And I believe it illustrates why the statute was properly imposed here. So in this case, the conduct being challenged is a public patent pool, public knowledge of a royalty-free cross license, public knowledge of a standard setting that was set in 2009, 99 to 2000, which the entire industry knew about, including Samsung, who sat on its right. It joined the SD Card Association in 2000. That's incorporated into the complaint by their reference to the press release. It sat back so all of these private actions Your Honor's talking about could have been brought within that period of time. But what happened is nobody brought any claims, none of the competitors brought claims, none of the consumers brought claims. Everybody was happy with this. And then 7, 8 years later, when all the policies have reposed and now, in effect, suddenly now Samsung is unhappy and said, you know what, now I'd like to bring a claim. That, Your Honor, does not threaten private enforcement at all, because there were none. Even Samsung sure brought this claim. They could have brought this claim when they entered into the 2003 license agreement, but they didn't. They waited all this time, and that runs right into the statute of limitation problems. I'd refer Your Honors to look at the actual paragraphs in this complaint. So, for example, and remember, this was the Second Amendment complaint, and this was the third time, and after the judge said, you have a statute of limitations problem, identify what's new. And instead, because they had to go after the earlier conduct, when you look at paragraph 50, paragraph 8, they say the origins of the SD group's licensing scheme can be traced back to 1999. That is when Panasonic, Toshiba, and SanDisk, three major competitors in critical markets for flash memory products and technology, first entered into this illegal combination. Then they go on to say, in paragraph 65 and 66, how the IP policy was formed at that time and that this was the essential way that they could license only through this patent pool. In paragraph 71, they talk about in March 2003, when the SD license was entered into by Samsung and the 6 percent royalty. And most importantly, in paragraph 153, as I said, they made it clear that this is all about the permanent cost advantage, which was gotten from the royalty-free cost license in combination with the standard setting. So, again, they can't state a claim, and that's why they repeated it again, without going after the structure. This isn't a case like a monopolization case or a joint venture. The standard is set, the patent pool is set. The fact that the patent pool keeps working is not independent, it's a reaffirmation  And it can't be used. Sotomayor Your focus is really on the merits of their claim. Well, no, Your Honor, it's not. Kagan You're saying they can't state an antitrust claim because this was a public claim. We have that argument, but that's not what I'm arguing now. That's the way I'm taking your argument. Well, let me try to phrase it better, because I'm not coming to you. Because the district court at all didn't get to the merits of your claim. I am not challenging. It wasn't briefed or anything, and it's not briefed here adequately before us. I'm not challenging the merits in this. What I am saying is, by their own allegations, their challenge is to the standard setting, the royalty-free cross license, the patent pool, all of which was formed before 2003, starting in 1999, and that the mere additional act of extending the 6 percent royalty to a new generation of products is not independent of their challenge to the time-barred conduct, because by their own definition – not by my definition – their own complaint says what's anti-competitive is not charging 6 percent. If you did that alone, they don't claim that's an antitrust violation, so I'm not arguing with their claim. They claim the violation is to have a royalty-free cross license, which started in 1999-2000, so that my clients would pay nothing, set up a patent pool, set up what they call a legal standard setting, and then have the ability to charge any license fee to the others. That's the permanent competitive disadvantage. Okay. Thank you, Your Honor. I appreciate your time and thank you. I think I got it. I think I got your assessment. Thank you. Thank you, Your Honors. I'd like to start with what I didn't hear from my opponent. He didn't mention the Osaka meeting in 2006. The easy case is when a cartel meets again to set new price and output terms. Here, it's the same price term, but applied to a different base. As Judge Ezra pointed out, a different set of products. It doesn't matter that they read on the same patents. They're new products. They're new technologies. Many products can read on the same patents. The second thing I didn't hear my opponent mention is those crucial paragraphs I read to you before, paragraphs 100 and 106. That's where it gives the lie to any argument by Panasonic that the injury and the anti-competitive conduct with respect to new generation SD cards was a continuation of the 2003 license. Those are the paragraphs where Panasonic told Samsung, you can't produce the new cards under the old license. You have to succumb to our new 6 percent license agreement on the new products. Nor did I hear him mention paragraphs 86 and 88 that say that the new cards can't read on the old specifications from the 2003 license. So the allegations in the complaint have to be taken as true, and you have to resolve any ambiguities in favor of the plaintiffs, and the district court failed to do that here. Now, turning to the argument that not all – just turning, again, to the argument that this was all foreordained by the creation of the same pool in 2003, it wasn't. And I want to be clear, I think the core point here is if the defendants had done nothing in Osaka in 2006, in their campaign, their relentless campaign to impose 6 percent royalty payments on licensees of the new generation technologies, if they had done nothing, they wouldn't be entitled to any royalties on the new generation cards, because, Your Honors, if they did nothing by their own admissions, the Quackenbush meeting in September 2006, the SB3C representative Quackenbush's e-mail in February 2007, if they had done nothing, they would have gotten no royalties on the new cards, because they said 2003 license doesn't cover the new cards. You need to take out our new 2007-06 license, which we've just imposed upon you. So this is the textbook opposite of the unabated, inertial consequences of the pre-limitations period anti-competitive act. Here, the inertial consequence of sticking with the 2003 license would be no more royalties once you have the new cards that do not – that are incompatible with the specifications in the old license, in which the defendants told SAMHSA they're not allowed to manufacture under the old license. So paragraphs 100 and 106 give the lie to that. Last, Your Honors, just on the technical points, and then I want to turn to Judge Gould's question, which I think is at the heart of what is wrong with the defendant's argument, the last just technical point is the defendants like to point you to two sentences in a 59-page complaint, the ones in paragraph 153 and 168, where we refer to a permanent cost advantage. And he says, see, we've admitted that everything began in 2003. That's not true. What you said in AMF about a permanent – anything permanent in the pre-limitations period is there has to be permanent anti-competitive injury. There's always some kind of permanent anti-competitive advantage in any continuing antitrust conspiracy. The only time the statute of limitations kicks in is when there's a permanent injury in the pre-limitations period. And there couldn't have been a permanent injury here. We didn't even make SD cards until the statutory period. And finally, Judge Gould, I think that what the defendants are asking for is exactly what you say would undermine the policy of the antitrust laws. They're asking for a safe harbor once they've colluded for four years about anything, indefinitely into the future, no matter how much technology changes and no matter how much they meet and act to create new anti-competitive effects. That is not what the antitrust laws hold. The whole point of the continuing conspiracy exception to the statute of limitations, which this Court has articulated over and over and over again, and I refer you in particular to Columbia Steel, to Hennigan, to LaSalvia, the key post-AMF cases, you've said you have to be allowed, when the defendant comes after you again, to go after the defendant, and he doesn't get a safe harbor because he started going after you 16, 18, or in the case of Hanover Shoe, 43 years before. Thank you very much. Roberts. Thank you. Thank you, counsel. We appreciate everybody's arguments. The matter has been well briefed and well argued, and the matter will be submitted at this time.
judges: Ezra, Gould, Paez